IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


PATRICIA CREED,

        Plaintiff,

    Vs.                          No. 09-1260-SAC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.


MEMORANDUM AND ORDER

       This is an action to review the final decision of the defendant

Commissioner of Social Security ("Commissioner") denying the claimant

Patricia Creed's  applications for disability insurance benefits under Title II

of the Social Security Act ("Act") and for supplemental security income

("SSI") under Title XVI of the Act.  With the administrative record (Dk. 10)

and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 12, 15,

and 16), the case is ripe for review and decision.  For the reasons

explained below, the court affirms the Commissioner's denial of benefits.

**PROCEDURAL HISTORY**

       Ms. Creed applied for disability benefits and SSI in June of

2006 alleging an onset date in January of 2006.  (Rec. 13).  Her claims

were denied initially and on reconsideration.  At the requested hearing before the administrative law judge ("ALJ"), the plaintiff was represented by counsel, and testimony was heard from the plaintiff and a vocational expert.  The ALJ's filed decision found that the plaintiff was unable to perform her past relevant work but that she retained the residual functional capacity to perform certain sedentary jobs that existed in significant numbers in the national economy.  (Rec. 26-27).  Thus, the ALJ concluded that the claimant had not been under disability from January of 2006 through the date of the decision, November 4, 2008.  (Rec. 28).   The Appeals Council denied the claimant's request for review, so the ALJ's decision is the Commissioner's final decision.  *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C.§ 405(g), which provides that the commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive."  The court's review also entails deciding "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Substantial evidence is that which "a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Persales* , 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Id.* (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists:

> "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'"

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992). Nonetheless,

"findings as to credibility should be closely and affirmatively linked to substantial evidence." *Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996) (internal quotation marks and citation omitted). The Tenth Circuit has said that "[t]he record must demonstrate that the ALJ considered all of the evidence," and the ALJ must "discuss[ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). The ALJ, however, is not required to discuss every piece of evidence. *Id.*

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If the claimant bears his burden of proof on the first four steps, he establishes a prima facie case of disability. *Lax v. Astrue*, 489 F.3d at 1084. The burden of proof then shifts to the commissioner at step five to show that the claimant retains the residual functional capacity ("RFC") "to perform work available in the national economy, given her age, education and work experience." *Hackett v. Barnhart*, 395 F.3d at 1171.

## SUMMARY OF ARGUMENTS

The plaintiff argues that the ALJ failed to give proper consideration and weight to the opinion of Dr. Aaron Field, a treating physician. The plaintiff claims the ALJ failed to follow proper methodology in arriving at the RFC finding. Finally, the ALJ's credibility findings on claimant's testimony about her physical and mental limitations are challenged as unsupported by specific evidence.

## DISCUSSION AND ANALYSIS

*Proper Weight to Medical Source Statement of Dr. Aaron Fields*

The administrative record contains the treatment notes of Dr. Aaron Fields who saw the plaintiff from July of 2007 through August of

2008. (Rec. 392-407). Dr. Fields also completed and dated September 9, 2008, medical source statements on the claimant for both her mental and physical impairments. (Rec. 434-438). In the source statements, Dr. Fields chose boxes indicating the claimant was "markedly limited" in her ability to understand, remember and carry out detailed instructions, to perform according to a schedule and be punctual, to complete a normal workday and workweek without interruption for psychologically-based symptoms and to work at a pace without unreasonable rest periods, to accept instructions and respond appropriately to criticism, to respond appropriately to work changes, and to travel to unfamiliar places or use public transportation. (Rec. 434-435). The source statement defined "markedly limited" as "[m]ore than Moderate, but less extreme resulting in limitations that seriously interferes with the ability to function independently." (Rec. 434). Dr. Fields checked that the claimant was "extremely limited," that is, "impairment level preclude useful functioning in this category," for the claimant's ability "to maintain attention and concentration for extended periods" and "to set realistic goals or make plans independently of others." (Rec. 434-435). As for her physical limitations, Dr. Fields checked boxes indicating the claimant could lift 15

6

pounds frequently, stand and/or walk continuously without a break for 45 minutes, and sit continuously without a break for two hours. (Rec. 436). He also indicated that the claimant would need to lie down two or three times a day to alleviate pain symptoms and that the claimant's medications would decrease her concentration, persistence or pace. (Rec. 437). On both source statements, Dr. Fields noted that the claimant's limitations existed prior to September 30, 2007. (Rec. 435, 437).

The ALJ evaluated Dr. Field's opinion as offered by a treating physician but declined ascribing controlling weight to it for these reasons:

> Aaron Fields, M.D., completed a physical assessment giving the opinion that the claimant was unable to sit longer than 1 hour of an 8-hour day, and stand and/or walk longer than 1 hour of an 8-hour day. Dr. Fields contradictorily stated that the claimant was able to sit continuously at one time up to 2 hours. Dr. Fields also completed a mental assessment describing the claimant as markedly to extremely limited in many areas of mental functioning. Dr. Fields has treated the claimant since July 20, 2007 for physical impairments and prescribed medication for the claimant's mental disorder. However, his records show that the claimant's joints were all nontender and without swelling and had full range of motion. There were intermittent observations of coughing and wheezing, but the claimant had good air movement, normal percussion, and was not in respiratory distress. The claimant displayed anxiety and depression with increased stress levels secondary to relationship problems on September 25, 2007, but beginning November 27, 2007, consistently stated that she was doing well and had no complaints. Respiratory, neurological, and cardiovascular functioning were generally reported to be normal. Dr. Field's opinion is not supported by his objective finding and therefore is not entitled to controlling weight.

(Rec. 24-25).  In then determining what weight to give Dr. Fields' opinion,

the ALJ decided against giving it any substantial weight for the following

reasons:

> Dr. Fields has seen the claimant for approximately a year.  However, he did not administer objective radiographs or testing and did not have the benefit of reviewing the other medical reports contained in the record.  The opinions expressed are quite conclusory, providing very little explanation of the evidence relied on in forming that opinion.  His own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.  In regard to mental functioning, Dr. Field's opinion appears to rest at least in part on an assessment of an impairment outside his area of expertise.  Dr. Fields apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  For these reasons, Dr. Field's opinions have not been given substantial weight in any area.

(Rec. 25).

"In deciding how much weight to give a treating source opinion,

an ALJ must first determine whether the opinion qualifies for 'controlling

weight.'"  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  An

ALJ is required to give the opinion of a treating physician controlling weight

if it is both:  (1) "well-supported by medically acceptable clinical and

laboratory diagnostic techniques"; and (2) "consistent with other substantial

evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient

in either of these respects, then it is not entitled to controlling weight." *Id.*

Even if a treating physician's opinion is not entitled to

controlling weight, "[t]reating source medical opinions are still entitled to

deference and must be weighed using all of the factors provided in 20

C.F.R. [§§] 404.1527 and 416.927." *Id.* (quotation omitted). The Tenth

Circuit identified those factors as including:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or
> testing performed; (3) the degree to which the physician's opinion is
> supported by relevant evidence; (4) consistency between the opinion
> and the record as a whole; (5) whether or not the physician is a
> specialist in the area upon which an opinion is rendered; and (6)
> other factors brought to the ALJ's attention which tend to support or
> contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation

omitted). And, "[a]fter considering the pertinent factors, the ALJ must give

good reasons in [the] . . . decision for the weight he ultimately assigns the

opinion." *Watkins*, 350 F.3d at 1301 (quotation omitted). Further, "if the

ALJ rejects the opinion completely, he must then give specific, legitimate

reasons for doing so." *Id.* (quotation omitted); *see also Washington v.*

*Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994). The ALJ "may reject a

treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*"  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted) (emphasis in original).

The claimant is critical of the ALJ's decision saying it fails to consider how Dr. Fields's medical source statement on mental impairment is supported by and consistent with the certain examination records from mental health providers at COMCARE of Sedgwick County.  In particular, the claimant emphasizes a certain record co-signed by Susan Brewer, M.D. on April 29, 2008, that diagnosed her with major depressive disorder, anxiety disorder, and polysubstance dependence in full sustained remission and that included a GAF score of 49 and a referral for medication evaluation. (Rec. 420-21).  Apparently, this is the only record of Dr. Brewer's opinion, and it is an intake summary that she co-signed with a social worker and that indicated she had "reviewed the above Intake Summary and Treatment Plan and approve[d] it as written."  (Rec. 420). The ALJ did discuss this record as follows:

> The psychiatrist assigned a GAF of 49 on intake, showing serious problems.  However, this GAF included Axis IV factors of separation from family, inadequate social support, unemployment, inadequate financial support, lack of insurance, and the fact that she was being

> sued. The claimant against reported improvement with medication beginning May 19, 2008.

(Rec. 16). Thus, the ALJ considered, explained and discounted the lower

GAF score of Ms. Creed supported by this record co-signed by Dr. Brewer

on May 7, 2008, and the same reasons apply to the same lower GAF score

given by the COMCARE psychiatry resident, Jeremy Handy on May 14,

2008. (Rec. 16, 426-27). The ALJ's decision reflects that he cited and

discussed other evidence from COMCARE records. (Rec. 16, 21, 22, 26).

In her reply brief, the claimant concedes that the ALJ did "cite and evaluate"

her mental health treatment at COMCARE. (Dk. 16, p. 1). Having

discounted the reliability of these lower GAF scores, the ALJ properly could

afford them little weight despite some facial consistency between them and

Dr. Fields's medical source statement.

      As set forth above, the ALJ did discuss the opinions of Dr.

Fields and evaluated them against the relevant factors set forth in the

governing rules and standards. The claimant contends simply because Dr.

Fields treated Ms. Creed for approximately one year that the ALJ erred in

not giving Dr. Fields's opinion controlling weight and in following, instead,

the opinions of consulting physicians. Courts certainly recognize that a

physician who has treated a patient frequently over an extended period may

have more insight into a patient's medical condition. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). Even so, the record does not show the ALJ erred in finding that objective medical evidence did not support Dr. Fields's medical source statements. Dr. Fields's treatment notes include a series of general findings of depression and a combination of anxiety and/or stress along with prescriptions to treat these symptoms. (Rec. 397, 399, 401, 403). Dr. Fields's notes, however, also show a pattern that Ms. Creed was "doing good," (Rec. 399), and "doing well," (Rec. 401). Dr. Fields's stated opinions were "quite conclusory" and lacked any explanatory detail to support them. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Dr. Fields's notes do not reveal details or insights suggesting he obtained a "longitudinal picture" of the Ms. Creed's mental impairment. *See* 20 C.F.R. §§ 404.1527(d)(2) and (3), 416.927(d)(2) and (3). As the ALJ properly noted, Dr. Fields's treatment notes do not reveal that any tests were administered, that other medical records were reviewed, or that Ms. Creed was experiencing "significant clinical or laboratory abnormalities one would expect" with a disabling condition. (Rec. 25). The claimant does not challenge the ALJ's observation that Dr. Fields's field of expertise is not assessing and treating

12

mental impairments.  *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

Under these circumstances, namely Dr. Fields's failure to test or to review

other testing results or records, the dearth of supporting treatment notes,

and his apparent lack of specialized expertise in this particular field, the

substantial evidence of record supports the ALJ's finding that Dr. Fields's

opinion on mental impairment largely and uncritically relied on claimant's

"subjective report of symptoms and limitations."  (Rec. 25).  The ALJ's

judgment of the claimant's credibility will be addressed later.

        The claimant generally complains that the ALJ relied on

consultative examiners, did not evaluate those opinions properly, and did

not address any conflicts with the opinions expressed by treating

physicians.  Her brief, however, fails to offer any specific arguments

showing impropriety in the ALJ's evaluation of those opinions.  This court

will not assume the role of advocate and so scrutinize the ALJ's decision for

any such deficiencies.

*Proper Methodology for Determining RFC*

        Ms. Creed makes several arguments here.  Offering nothing

new to consider, she repeats her position that the ALJ erred in denying

controlling weight to Dr. Fields's opinions and in not concluding his opinions

were supported by Dr. Brewer's finding of a GAF of 49. Having addressed this argument above, the court will not revisit it in this context of the RFC finding. The claimant also contends the ALJ gave substantial weight to the opinion of the consultative examiner, Molly Allen, Psy. D., but failed to consider as part of Allen's opinion that Ms. Creed was markedly to extremely limited in persistence. The claimant argues this aspect of Allen's opinion is consistent with that of Dr. Fields's who marked boxes indicating Ms. Creed was extremely limited in her "ability to maintain attention and concentration for extended periods" and markedly limited in her ability to follow detailed instructions, to perform within a schedule, and to maintain regular and punctual attendance. (Rec. 434). Ms. Creed further contends the RFC assessment fails to include these limitations which would preclude her from all work as established by the vocational expert's testimony. Thus, the claimant's position is that the ALJ's assessment was not based on all relevant evidence, including Dr. Fields's medical source statement, Ms. Creed's own testimony of her limitations, and Dr. Allen's opinion on the claimant's persistence.

The ALJ discussed Dr. Allen's opinions as follows:

Consultative psychological examiner Dr. Allen stated that although the claimant was fairly eccentric and sometimes attention seeking, she

14

had been able to manage employment in the past. The claimant was able to understand and carry out simple instructions but had weak attention and concentration and inconsistent persistence. Dr. Allen stated that the claimant may have difficulty working alongside and for other people because the claimant tended to be attention seeking; however, the claimant was able to adapt to the typical workplace including punctuality, attendance, and productivity. The claimant kept up with some tasks, but not with others (exhibit 12F). Although these are not treating medical sources, Dr. Allen and Dr. Dipeolu's opinions and findings are consistent with those of treating mental health sources and therefore have been given substantial weight.

(Rec. 24). After examining Ms. Creed and her records in March of 2007, Dr.

Allen opined that the claimant's "persistence tends to be fairly inconsistent.

She keeps up with some tasks, but not others." (Rec. 338) A year later, Dr.

Allen again examined Ms. Creed and did not indicate finding any significant

change in her mental status. Dr. Allen similarly opined:

> She was administered some formal mental status exam items. These did not appear to annoy her as much as they did last time. However, it appeared at times that her cooperation with the tasks was minimal at best.
> . . . .
> **ABILITY TO SUSTAIN WORK-RELATED SKILLS**: It appears that Ms. Creed is able to understand and carry out simple instructions. Her attention and concentration are fair, mainly out of disuse. The main difficulty she would have is in interpersonal relationships--getting along with coworkers and supervisors. She may have difficulty adapting to the demands of a work environment, mainly because of her poor attitude. She is not at all a persistent individual, . . . .

(Rec. 368). The court cannot fault the weight or manner in which the ALJ

interpreted and relied upon Dr. Allen's written opinions. Without some

reason for believing that Dr. Allen considered Ms. Creed's mental status to have deteriorated since March of 2007, the ALJ could reasonably read Dr. Allen's indefinite description in 2008 of what the claimant is not, that is, "not at all a persistent individual" in light of her more definite description in 2007 of what the claimant did possess, that is, a persistence that "tends to be fairly inconsistent."  Thus, the record does not establish, as the plaintiff argues, that Dr. Allen was of the opinion that the claimant's persistence was markedly or extremely limited or that the ALJ failed to consider Dr. Allen's opinion on the claimant's persistence.  Substantial evidence supports the ALJ's finding that the claimant has "moderate difficulties" with "concentration, persistence or pace."  (Rec. 19).

The ALJ's decision properly lays out his findings as to what evidence he found reliable and credible in determining the RFC.  The decision shows that "all of the relevant medical and other evidence" was considered including that from medical sources and from the claimant.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The weight given the respective evidence is based on credibility findings supported by specific reasons.  The court finds no support for the claimant's argument that the ALJ failed to use proper methodology in deriving an RFC.

*Improper Credibility Analysis*

The claimant contends the ALJ's credibility analysis is insufficient in discounting her symptom complaints based on minimal daily living activities, on the level of medical treatment, and on limited part-time work. The claimant argues the ALJ erroneously disregarded her testimony about needing to lie down three to four times a day for 30-minute intervals due to pain. The claimant points out that this is corroborated in Dr. Fields's medical source statement. Finally, the plaintiff summarily disputes that the ALJ followed the proper credibility analysis and gave sufficient reasons linked to substantial evidence to support the credibility findings.

Because "[c]redibility determinations are peculiarly the province of the finder of fact," a reviewing court will not upset them "when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Credibility determinations, however, cannot be based on intangible or intuitive reasons, but "must be grounded in the evidence and articulated in the determination or decision." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391.

The framework for analyzing allegations of disabling pain entails the following:  "1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling."  *White v. Barnhart*, 287 F.3d 903, 909 n.3 (10th Cir. 2002) (citing *Kepler*, 68 F.3d at 390).  In evaluating a claimant's credibility on allegations of pain, the courts have considered the following factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler*, 68 F.3d at 391 (quotation marks and citation omitted).  "*Kepler* does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's decision lays out the proper framework and relevant factors and demonstrates that they were followed in making the negative

credibility assessment of the claimant. The ALJ properly considered the

claimant's daily activities as one factor in this assessment:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> . . .

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

> As mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. . . . She confirmed to her Comcare psychiatrist on May 29, 2008 that she was continuing to work 5 hours a month as well as raising a flower garden that kept her busy. She was late to counseling appointments on July 11, 2008 and July 25, 2008 because she had been going to garage sales. Her reported inability to do routine household chores is contradicted by her other activities of gardening and going to garage sales. Her reported inability to sit long enough to perform work activity is not consistent with her daily activities of sitting outdoors with her boyfriend each evening.

(Rec. 21) (citations omitted). Substantial evidence of record supports these

findings. The ALJ's decision does not purport to equate the claimant's part-

time work with the ability to work forty hours a week, but as noted in the

decision, it does indicate an activity level beyond what the claimant described in her testimony. The ALJ specifically noted that "[t]he claimant's ability to sew, do crafts, and play pool in local bars as well as staple envelopes at work contradicts her alleged numbness and fatigue in the hands which make it impossible to write a letter without rest." (Rec. 23).

As for the medical treatment that the claimant received for her impairments, the ALJ noted in part:

> The record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. <u>The objective evidence does not support her allegations of worsening of any impairment. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that they would not currently prevent work.</u>

> The claimant has reported a history of back pain since age 18 treated only chiropractic management until May, 2006, the month prior to her filing her disability application. Her failure to seek medical treatment for back pain until shortly before filing for disability benefits contradicts her allegations of severe pain since age 18.

(Rec. 23) (underlining added). And with regard to the effectiveness of this medical treatment, the ALJ found that the claimant had made inconsistent statements. At the hearing, the plaintiff testified to side effects from the prescriptive medications, but she denied having any side effects both on forms she completed and in statements she made to a psychiatric nurse practitioner, J. Anderson. (Rec. 21). Contrary to the claimant's testimony

20

that she has difficulty doing just about anything even while on prescription medications for her mental impairments, (Rec. 54), the ALJ noted that Nurse Anderson's treatment notes show medications to have improved the plaintiff's mental status and stabilized her condition. A couple of months later, the claimant told the consultative psychological examiner that the medications were working "wonderfully well." (Rec. 21). The ALJ's decision is replete with references to other medical opinion evidence from Dr. Dipeolu, Dr. Allen and Dr. Adams showing that the claimant's memory, judgment, attention and concentration were sufficient for simple work.

The ALJ noted the claimant's testimony on needing to lie down three to four times a day for 30 minute intervals. (Rec. 22). The ALJ observed that this did not appear as a recommendation in any of the physicians' treatment notes. As the claimant now argues, this appears as a restriction in Dr. Fields's medical source statement dated just over a week before the evidentiary hearing. This is the first and only time such a limitation appears in any medical record. The court will not second-guess the ALJ in this credibility assessment, particularly when the ALJ assessed from the objective medical evidence that "[p]hysical examinations have failed to reveal any significant problems with ambulation, sitting, bending,

grasping or reaching."  (Rec. 23).

The court is satisfied that the ALJ's decision lays out specific reasons for disbelieving the claimant's complaints of disabling symptoms and limitations.  In addition to the reasons discussed above, the ALJ noted the claimant's "contradictory and inconsistent statements" about when she stopped using illegal drugs and alcohol.  (Rec. 22).  The ALJ highlighted from Dr. Allen's reports several inconsistencies noted in the claimant's statements, observed symptoms, and behavior.  (Rec. 22).  The ALJ concluded:  "In sum, the claimant simply alleges a greater degree of debilitation than what objective evidence can support.  There certainly is some evidence of back problems, depression, poor focus, and COPD, but she does not have any limitations of a disabling nature."  (Rec. 23).  It's true that the claimant has received treatment for pain and is taking pain medication.  This alone is not proof of disabling pain and does not establish error in the ALJ's credibility determination.  The court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably made a different choice had the matter been before it de novo."  *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted).  The court's independent review of the record reveals that

the ALJ has followed the proper credibility analysis and has set forth sufficient reasons linked to substantial evidence to support the credibility findings.

*Plaintiff's Reply Brief*

For the first time here, the plaintiff argues the ALJ failed at step five to ask the vocational expert about a conflict over whether the DOT addressed jobs allowing a sit/stand option every thirty minutes and involving a restriction of only occasional conduct with co-workers and a restriction of no conduct with the public. In light of the plaintiff's failure to raise this argument in his opening brief, the court will not consider it. *See Plotner v. AT & T Corp.*, 224 F.3d 1161, 1175 (10th Cir. 2000) ("[O]ur general [is] that we do not consider issues raised for the first time in a reply brief."); *Thygesen v. Barnhart*, 2004 WL 2782855, at *1 n.1 (D. Kan. 2004). The court rejects any notion that these arguments are being properly raised now in response to an argument in the appellee's brief.

In sum, the court is not persuaded by the merits of the plaintiff's arguments. The court finds that the ALJ's decision is supported by substantial evidence, that is, evidence which reasonable minds might accept as adequate to support the conclusions. The court's review of the

record shows the ALJ observed the applicable rules of law in weighing the different types of evidence.  It is not this court's right to reweigh the evidence or substitute its judgment.  Consequently, the decision of the Commissioner is affirmed.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 15th day of June, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge